[Cite as *Facemyer v. Facemyer*, 2025-Ohio-205.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

GREGORY J. FACEMYER,

Plaintiff-Appellant,

v.

KRISTEN K. FACEMYER nka PATCH,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 24 MA 0064

---

Civil Appeal from the
Court of Common Pleas, Domestic Relations Division, of Mahoning County, Ohio
Case No. 2012 DR 00437

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Reversed and Remanded.

---

*Atty. Anthony W. Greco* and *Atty. Joseph S. Jeziorowski,* Greco Law, for Plaintiff-Appellant and

*Atty. Louis E. Katz* and *Atty. Matthew C. Giannini,* for Defendant-Appellee.

Dated:  January 16, 2025

**DICKEY, J.**

{¶1} Appellant, Gregory J. Facemyer, appeals from the June 4, 2024 judgment entry of the Mahoning County Court of Common Pleas, Domestic Relations Division, terminating physical parenting time with his 16-year-old daughter and restricting contact to text messages and emails. On appeal, Appellant asserts the trial court erred in terminating his visitation rights because it failed to make the required initial finding that there was clear and convincing evidence of extraordinary circumstances that would justify such termination. Appellant also contends the court erred in accepting and considering a recorded statement that purports to set forth the minor child's concerns regarding parenting time. For the reasons stated, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

{¶2} Appellant and Appellee, Kristen K. Facemyer (nka Patch), were married and have two children: E.F. (d.o.b. 1/11/2005, emancipated); and M.F. (d.o.b. 5/3/2008) ("minor child"). The parties divorced on June 19, 2013. They were awarded equal parenting time pursuant to a shared parenting plan.

{¶3} On September 5, 2019, the trial court terminated the shared parenting plan and designated Appellee as the children's residential parent and legal custodian. However, the court determined it was in the children's best interest for the parties to be awarded equal parenting time. Appellee subsequently filed a motion for modification of parenting time and companionship.

{¶4} A two-day hearing was held on December 15, 2023 and April 5, 2024. Present for the hearing were Appellant; counsel for Appellant; Appellee; counsel for Appellee; Attorney Edward Colon, the Guardian Ad Litem ("GAL"); and Attorney Carol Sopkovich, the duly appointed counsel for the minor child. Attorney Sopkovich was not present at the hearing on December 15, 2023, because her appointment as counsel for the minor child occurred after that time. At the hearing on April 5, 2024, the minor child was less than a month away from celebrating her sixteenth birthday.

{¶5} Throughout these proceedings, it was found by the trial court that Appellant has a confrontational personality and has maintained an aggressive and adversarial approach toward the children and Appellee.

{¶6} The GAL described the minor child as very bright but very timid, repressed, and emotionally fragile. The GAL described Appellee as passive aggressive. The GAL described Appellant as overbearing and persistent. While acknowledging challenges in the relationship between Appellant and the minor child, the GAL did not believe it was in the minor child's best interest for Appellant's parenting time to be reduced or terminated. The GAL believed restricting Appellant's visitation would be detrimental to the minor child. The GAL said the focus should be on mending the father-daughter relationship. The GAL recommended counseling for the entire family.

{¶7} The trial court did not accept the GAL's recommendation for family counseling indicating that the family had previously been involved in counseling and that it was unsuccessful. Appellant, however, believes counseling is necessary due to his observations that the minor child is in distress. Appellee, the parent with medical decision-making authority, decided not to enroll the minor child in counseling.

{¶8} Appellee believes extreme issues exist between Appellant and the minor child. Appellee testified her daughter is not happy with the current visitation order and spends a lot of time in her bedroom by herself. Appellee wished for Appellant's visitation to be modified to alternating weekends.

{¶9} The trial court held three separate in camera interviews with the minor child beginning in September 2022. The minor child said when she is with Appellant at his house, she spends time alone in her bedroom. When traveling with Appellant in his car, the minor child sits in the backseat and does not communicate with him. The minor child complained that when she is at a restaurant with Appellant, he is on his cell phone. The minor child said that time spent with her father is not positive or rewarding.

{¶10} The parties' older daughter, E.F., turned 18 years old on January 11, 2023. Because E.F. does not like how Appellant treats her, she has stopped seeing him. E.F. also does not like how Appellant treats the minor child. E.F. expressed her concerns when she would no longer accompany her sister to visits with their father. The trial court cautioned Appellant that he was placing his relationship with the minor child in jeopardy if he did not amend his parental manners.

{¶11} Appellant testified the minor child is a straight-A student and involved in many activities. Appellant said his relationship with the minor child is very good and

described his daughter as a normal teenage girl. Appellant does not know why his parenting time should be limited and claims he is the victim of parental alienation. Appellant believes that not only should his parenting time continue, but additional parenting time should be provided. Appellant acknowledged he has experienced parental problems with the minor child. He said he has gone to a counselor to improve as a parent. Appellant and his mother, Barbara Facemyer, have attended all of the minor child's extracurricular activities. During visits, Appellant said he made efforts to improve his relationship with his daughter. He asked her about school and her activities. He would also ask her to do things together such as shop or go to dinner. Appellant believed counseling was not only feasible, it should be mandatory to maintain a vital relationship with his daughter.

**{¶12}** Appellant's mother testified that for approximately the past one-year period, despite her longstanding relationship with her granddaughter, the minor child began giving her only one-word answers to questions and refused to otherwise communicate with her. She additionally testified that for the past two years, the minor child would immediately dash to her room after school pickup and indicated her mannerisms and demeanor changed with Appellant, family, and friends.

**{¶13}** Following the December 15, 2023 hearing, the trial court found the minor child expressed sufficient reasoning ability to express her wishes and concerns. The court found the minor child's reasons for not wanting to see her father were well thought out. Based upon the testimony of all parties and the GAL, the trial court ruled at that time that effective January 1, 2024, parenting time for Appellant should be on a week-on, week-off basis from 5:00 p.m. Friday to 5:00 p.m. Sunday.

**{¶14}** At the outset of the April 5, 2024 proceedings, the trial court permitted the parties to conduct a pretrial with counsel and the GAL. As a result, with the exception of the pending motions for companionship and parenting time, all other motions were withdrawn, including for modification of child support.

**{¶15}** The minor child's counsel requested that the trial court conduct an in camera interview with the GAL as to the wishes and the concerns of the minor child. At the April 5, 2024 last in camera interview, the minor child expressed that she did not want to visit with Appellant, but that should she be ordered to visit with her father, that overnight

visits be terminated. The minor child requested that the trial court and the GAL listen to an audio recording she made during a visit with Appellant. The recording was approximately 30 minutes long with Appellant saying to the minor child that he is trying to be her dad and show her love. The recording also reveals Appellant going on about why the minor child does not want to spend time with him and blaming Appellee and others for their relationship.

{¶16} During the afternoon session, Appellant elected to present evidence relevant to the companionship and parenting of the minor child. The GAL believed the prior order of the trial court (prior to December 15, 2023) should be re-implemented. The GAL believed it would be in the minor child's best interest to have a reunification with Appellant. The GAL acknowledged, however, that the minor child indicated during the last in camera interview that she did not want to visit with her father and presented a 30-minute tape of Appellant's monologue including his dissertation as to why the parenting and companionship were not successful. The minor child basically indicated she remains in her bedroom during visits with her father. The GAL reaffirmed his recommendation that Appellant's visits with the minor child should continue.

{¶17} Appellant's mother opined that the minor child's attitude changed during the past year. She did not understand why since Appellant always attempted to provide proper parenting.

{¶18} Appellant testified he does not understand the wishes and concerns of his daughters. Appellant continues to believe that he has a loving relationship with the minor child and that parenting time should be expanded. Appellant believes many of the issues and problems that have manifested are a result of parental alienation. Regarding the audio recording, Appellant was unaware that the minor child was taping him, does not know the date of the taping, and does not know the contents.

{¶19} The trial court indicated it has been involved with this matter for approximately two years. The court found it necessary to prohibit Appellant from contacting the minor child's medical and dental personnel. The court further found it necessary to modify Appellant's parental rights and responsibilities by eliminating holidays and summer vacations, resulting in the current order of every other weekend from Friday at 5:00 p.m. to Sunday at 5:00 p.m. The court noted that the tape recording

presented by the minor child was a 30-minute monologue of Appellant. The minor child indicated she no longer wishes to have any contact with her father.

{¶20} In its June 4, 2024 judgment entry, the trial court concluded as follows:

In determining whether to grant visitation rights to a parent, the Court considers the following Ohio Revised Code Section 3109.05[1](D)(1-15):

A. The prior interaction with the person requesting visitation and that person is not a parent, sibling or relative;

B. The geographical distance between the child's residence and the non-residential parent's or the residence of the person requesting visitation if not a parent;

C. The child's and the parent's available time, including, but not limited to, the parent's work schedule, the child's school schedule, the child's and the parent's holiday and vacation schedule;

D. The age of the child;

E. The child's adjustment to home, school and community;

F. The child's wishes;

G. The health and safety of the child;

H. The amount of time the child will have to spend with siblings;

I. The mental and physical health of all parties;

J. Each parent's willingness to facilitate visitation;

K. Whether the parent or other party requesting visitation has been convicted or pleaded guilty to child abuse;

L. Whether either parent has established or plans to establish a residence out of state; and

Case No. 24 MA 0064

M. Any other factor to the best interest of the child.

(6/4/2024 Judgment Entry, p. 8-9).

{¶21} The trial court further concluded:

The Court has been involved with this case for a period of approximately two (2) years and has noted the ongoing issues between the emancipated child . . . and the current minor child . . . . The Court is aware of the emancipated daughter's unwillingness to communicate and visit with the Plaintiff. Further, the Court acknowledges during the course of the proceedings, the interference by the Plaintiff with dental/orthodontic issues. During the past approximately twelve (12) months, the Court has conversed with both counsels of the Plaintiff and has indicated outstanding issues between the Plaintiff and the minor child. That the Court has advised Plaintiff's counsel of the minor child's struggle in her dealings with the father and the genuineness of the minor child's in-camera interviews. This Court, as all Domestic Relation Courts and Family Courts are motivated by the best interest of the minor child as set forth in the Ohio Revised Code. The Court has observed the ongoing issues and the intelligence and intransigence of the Plaintiff in regard to the Defendant and the minor child as well as the emancipated child. Based upon the best interest of the minor child, the Court does hereby issue its decision.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the current parenting order of January 5, 2024, in which Plaintiff received alternating weekends parenting time from Friday at 5:00 p.m. to Sunday at 5:00 p.m. shall hereby be terminated. That the minor child shall not be required at this time to have any parenting time with the Plaintiff. If it is true according to Plaintiff's testimony that he has a "loving" relationship with [the minor child], a Court imposed visitation schedule may actually diminish the time [the minor child] would be with Plaintiff. [The minor child] is now 16 years old and her wishes are given greater weight than if she were much

younger. Let the "loving" relationship expressed by Plaintiff repeatedly serve as the source for nurturing the future relationship between [the minor child] and Plaintiff. The minor child shall unilaterally determine when and how any parenting time shall occur with the Plaintiff. The Plaintiff may contact the minor child via text messages and emails in a reasonable fashion to maintain contact with his daughter. . . .

(*Id.* at p. 9-10).

**{¶22}** Appellant filed a timely appeal and raises two assignments of error.

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED AS A MATTER OF LAW TO THE MATERIAL PREJUDICE OF GREGORY BY TERMINATING GREGORY'S VISITATION RIGHTS WHERE IT FAILED TO MAKE THE REQUIRED INITIAL FINDING THAT THERE WAS CLEAR AND CONVINCING EVIDENCE OF EXTRAORDINARY CIRCUMSTANCES THAT WOULD JUSTIFY TERMINATING GREGORY'S VISITATION WITH [THE MINOR CHILD].**

**{¶23}** In his first assignment of error, Appellant argues the trial court erred in terminating his visitation with the minor child without making an initial finding that there was clear and convincing evidence of extraordinary circumstances justifying such termination.

Modification [and termination, *see Sirons v. Stewart*, 1994 WL 73346 (2nd Dist. March 9, 1994)] of visitation rights is left to the sound discretion of the trial court. *Braatz v. Braatz* (1999), 85 Ohio St.3d 40, 45, 706 N.E.2d 1218. . . . [An abuse of discretion occurs when a court exercises its judgment "in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.]

Pursuant to R.C. 3109.051(D), in determining parenting time matters under R.C. 3109.051, the court shall consider all of the following factors: (1) the prior interaction and interrelationships of the child with the child's parents, siblings and other persons related by consanguinity or affinity; (2) the geographical location of the residence of each parent and the distance between those residences; (3) the child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule; (4) the age of the child; (5) the child's adjustment to home, school, and community; (6) any wishes and concerns of the child expressed to the court; (7) the health and safety of the child; (8) the amount of time that will be available for the child to spend with siblings; (9) the mental and physical health of all parties; (10) each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights; (11) prior convictions for certain offenses or acts resulting in abuse or neglect; (12) (applies only when person other than a parent seeks visitation); (13) whether the residential parent has continuously and willfully denied parenting time rights; (14) whether either parent has established a residence or is planning to establish a residence outside this state; (15) (applies only where person other than parent seeks visitation); (16) any other factor in the best interest of the child. R.C. 3109.051(D).

Generally, the trial court looks only to the factors enumerated in R.C. 3109.051(D) and determines if modification of visitation is in the best interest of the child. *Braatz v. Braatz* (1999), 85 Ohio St.3d 40, 45, 706 N.E.2d 1218. However, in some cases, the foregoing statute does not stand in isolation. *In re Kaiser,* 7th Dist. No. 04 CO 9, 2004-Ohio-7208, ¶ 10. It must be read and interpreted in conjunction with other factors derived from caselaw to protect against infringement upon an individual's constitutional rights. *Id.*

Case No. 24 MA 0064

This court has specifically held that "[t]he nonresidential parent has a fundamental and natural right to visitation." *Anderson v. Anderson* (2002), 147 Ohio App.3d 513, 2002-Ohio-1156, 771 N.E.2d 303, ¶ 22 (7th Dist.), citing *Johntonny v. Malliski* (1990), 67 Ohio App.3d 709, 588 N.E.2d 200, and *Pettry v. Pettry* (1984), 20 Ohio App.3d 350, 486 N.E.2d 213. "The child also has a fundamental right to visitation with the nonresidential parent." *Id.,* citing *Porter v. Porter* (1971), 25 Ohio St.2d 123, 54 O.O. 260, 267 N.E.2d 299, paragraph three of the syllabus.

Concerning this fundamental right of the nonresidential parent to visitation with their child, this court has also noted that the right should be denied only under extraordinary circumstances. *Hoppel v. Hoppel,* 7th Dist. No. 03 CO 56, 2004-Ohio-1574, ¶ 44, citing *Pettry,* supra, paragraph one of the syllabus. The burden of proof is on the one contesting visitation to demonstrate extraordinary circumstances by clear and convincing evidence. *Pettry,* 20 Ohio App.3d at 352–353, 486 N.E.2d 213.

*Pettry* identified two extraordinary circumstances that would qualify: (1) if the noncustodial parent was unfit; or (2) if visitation would cause harm to the child. Another court has held that it would be an extraordinary circumstance if the noncustodial parent were imprisoned for a term of years for a crime of violence. *In re Hall* (1989), 65 Ohio App.3d 88, 90, 582 N.E.2d 1055. The examples listed in *Pettry* and *Hall* are not meant to provide an exclusive list of possible extraordinary circumstances. *Hoppel,* supra (involving nonresidential parent's conviction for sexual battery against subject child's stepsister). Once the custodial parent proves the existence of an extraordinary circumstance, the burden shifts back to the noncustodial parent to prove that any visitation would be in the best interests of the child. *Id.*

. . .

[W]e find that when a trial court terminates a nonresidential parent's right of visitation the court must make a finding in its judgment entry that there was clear and convincing evidence of extraordinary circumstances justifying termination of those rights.

*Dubec v. Pochiro*, 2010-Ohio-1293, ¶ 21-26, 31 (7th Dist.); *see also In re T.M.M.*, 2017-Ohio-9219, ¶ 44 (7th Dist.), citing *Dubec*.

**{¶24}** In this case, in its judgment entry, the trial court terminated Appellant's physical parenting time with the minor child, stating:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the current parenting order of January 5, 2024, in which Plaintiff received alternating weekends parenting time from Friday at 5:00 p.m. to Sunday at 5:00 p.m. shall hereby be terminated. That the minor child shall not be required at this time to have any parenting time with the Plaintiff. . . . The minor child shall unilaterally determine when and how any parenting time shall occur with the Plaintiff. The Plaintiff may contact the minor child via text messages and emails in a reasonable fashion to maintain contact with his daughter. . . .

(6/4/2024 Judgment Entry, p. 10).

**{¶25}** The fact that Appellant is only awarded the ability to contact the minor child via text messages and emails constitutes a termination of visitation. *See Dubec*, 2010-Ohio-1293, ¶ 27-29 (7th Dist.). "The Ohio Supreme Court has observed that visitation means physical, face-to-face visitation." *Id.* at ¶ 29, citing *Braatz*, 85 Ohio St.3d at 44.

**{¶26}** At the center of all domestic cases involving minors is the best interest of the child. Appellant wants visitation with his daughter. The minor child does not want to spend time with her father. The GAL did not believe it was in the minor child's best interest for Appellant's parenting time to be reduced or terminated. Notwithstanding Appellee's belief that courts cannot fix broken parent-child relationships, this court will not disregard the issue before us and ignore the relevant case law.

**{¶27}** As addressed, the trial court reviewed the minor child's best interests under the factors enumerated in R.C. 3109.051(D) in its judgment entry, and concluded it was in the minor child's best interest to terminate Appellant's visitation. However, the court did not make the required initial finding that there was clear and convincing evidence of extraordinary circumstances that would justify terminating Appellant's visitation rights. *See Dubec*, 2010-Ohio-1293, ¶ 26 (7th Dist.). The trial court skipped that step and instead limited its review to the best interest of the child factors.

**{¶28}** Although the directive may be procedural rather than substantive, on remand, should the trial court again decide to terminate Appellant's visitation rights with the minor child, before doing so, the trial court, in its judgment entry, shall make the required initial finding that there is clear and convincing evidence of extraordinary circumstances that would justify such termination.

**{¶29}** Appellant's first assignment of error is with merit.

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT VIOLATED R.C. 3109.051(C) AND ERRED AS A MATTER OF LAW TO THE MATERIAL PREJUDICE OF PLAINTIFF BY ACCEPTING AND CONSIDERING A RECORDED STATEMENT THAT PURPORTS TO SET FORTH THE CHILD'S CONCERNS REGARDING PARENTING TIME.**

**{¶30}** In his second assignment of error, Appellant contends the trial court violated R.C. 3109.051(C) and erred in accepting and considering a recorded statement that purports to set forth the minor child's concerns regarding parenting time, i.e., "particularly where such recorded statement purports to be an audio recording of a party – undisclosed to that party – that was neither introduced nor admitted into evidence at trial." (8/26/2024 Appellant's Brief, p. 23).

**{¶31}** R.C. 3109.051(C) permits the trial court, in its discretion, to interview in chambers a minor child regarding her wishes and concerns with respect to parenting time or visitation of a noncustodial parent. However, R.C. 3109.051(C) places limits and restrictions on the trial court's discretion, including:

Case No. 24 MA 0064

A court, in considering the factors listed in division (D) of this section for purposes of determining whether to grant any parenting time or visitation rights, establishing a parenting time or visitation schedule, determining other parenting time matters under this section . . . or visitation matters under this section . . . or resolving any issues related to the making of any determination with respect to parenting time or visitation rights or the establishment of any specific parenting time or visitation schedule, *shall not accept or consider a written or recorded statement* or affidavit *that purports to set forth the child's wishes or concerns regarding those parenting time or visitation matters.*

(Emphasis added). R.C. 3109.051(C).

**{¶32}** Thus, R.C. 3109.051(C) bars the trial court from accepting or considering a recorded statement purporting to set forth not only the minor child's wishes, but also the child's concerns regarding parenting time or visitation.

**{¶33}** As stated, the trial court in this case accepted and considered a recorded statement presented by the minor child during the April 5, 2024 last in camera interview that purported to set forth the child's concerns regarding parenting time or visitation with Appellant. The court made factual findings relating to the content of the audio recording played by the minor child during that in camera interview in its June 4, 2024 judgment entry:

It was on this last in camera interview that [the minor child] requested that both the Court and the Guardian Ad Litem listen to a tape recording she made as a sample of her father's conduct when she visits him. The tape recording was approximately 30 minutes long with Mr. Facemyer ranting and raving why [the minor child] does not want to spend time with him and blaming Defendant and everyone else for the relationship he has had with [the minor child]. . . .

. . .

Case No. 24 MA 0064

The Court noted that the tape recording presented by the minor child was a 30-minute monologue of the Plaintiff. The minor child did not make one comment during the entire taping. . . .

(6/4/2024 Judgment Entry, p. 4, 8).

**{¶34}** In camera interviews with children are confidential and not to be disclosed to the parents. *Chapman v. Chapman*, 2007-Ohio-2968, ¶ 26 (2nd Dist.). Parents do not have the right of access to the sealed transcript of the in camera interview between the children and the trial court. *See Lawson v. Lawson*, 2013-Ohio-4687, ¶ 57 (5th Dist.).

**{¶35}** The recorded statement at issue, characterized by the trial court as a 30-minute monologue of Appellant, was not disclosed to Appellant nor introduced or admitted into evidence during the hearings. Rather, the minor child requested at the last in camera interview that the trial court and the GAL listen to the audio recording as support for her concerns with visiting her father. The trial court considered the recording as evidence of Appellant's conduct during a visitation with his daughter.

**{¶36}** Problematically, the content of the audio recording was controverted by Appellant as he testified at the April 5, 2024 hearing that he did not know what conversation was recorded, did not know the date of the recording, and did not even know what the court was referring to. Appellant was first made aware of the recording's existence at this time and had no opportunity to examine it or present any evidence or argument in his defense. *See In re Adoption of C.L.T.,* 2012-Ohio-5706, ¶ 19 (8th Dist.), citing *Child Care Provider Certification Dept. v. Harris*, 2003-Ohio-6500, ¶ 15 (8th Dist.) (Trial court's judgment was reversed because it did not afford the party an opportunity to present a defense to the evidence relied on against her). The GAL found it unusual that the minor child recorded the conversation and made no comment to her father.

**{¶37}** While the trial court could consider the minor child's wishes expressed during the in camera interview, it could not "accept or consider" the "recorded statement" presented by the minor child that purports to set forth her concerns regarding parenting time or visitation with her father based on the facts presented in this case. *See* R.C. 3109.051(C).

**{¶38}** Appellant's second assignment of error is with merit.

**CONCLUSION**

**{¶39}** For the foregoing reasons, Appellant's assignments of error are well-taken. The June 4, 2024 judgment entry of the Mahoning County Court of Common Pleas, Domestic Relations Division, terminating Appellant's physical parenting time with the minor child is reversed and the matter remanded for further proceedings according to law and consistent with this Opinion.

Waite, J., concurs.

Hanni, J., concurs.

―――――――――――――――

For the reasons stated in the Opinion rendered herein, the assignments of error are sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Domestic Relations Division, of Mahoning County, Ohio, is reversed.  We hereby remand this matter to the trial court for further proceedings according to law and consistent with this Court's Opinion.  Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**<u>NOTICE TO COUNSEL</u>**

**This document constitutes a final judgment entry.**